Israel Academy of Sciences and Humanities v. American Foundation for Basic et al. And we have Mr. Shapiro. I see you reserve two minutes for rebuttal, Mr. Shapiro. Begin whenever you're ready. Good morning, and may it please the court. I'm Andrew Shapiro for the appellant. New York law provides that a beneficiary of a charitable trust who has a special interest in the charity's funds is entitled to sue the trust for redress of alleged wrongs. And the question presented in this case is what type of evidence a court can consider to determine if such a special interest exists. The district court held that the only evidence that can be consulted is the bylaws of the charity and its certificate of incorporation. But that rule finds no support in New York law. Without the Saktikos case, the second department said this special interest is found by looking to the trust's chartering documents to discern the purpose of the trust. Why doesn't that provide us guidance? Your Honor, the Saktikos case did not say if only, and let's look at what the Saktikos court did. It said when examining the evidence in that case, excuse me, said the certificate of incorporation does not name the appellant as a beneficiary, nor does it name any beneficiary. The will did not mention the appellant. So in Saktikos, the court looked to the will. It looked to the will as supporting its conclusion from the chartering documents. It didn't suggest that if the will were different than the chartering documents that the will would control. I just read you the line where it seems to suggest that the chartering documents are what you look to. I don't think so, Your Honor, because the court after that says- What case did you have then, a New York case where they ignored the chartering documents and found some other document that conflicted with the chartering documents to control? What New York case has done that? Well, I don't know if I would say that it conflicted with the chartering documents. But in the Swift case, for example, the court looked really just to what the gift agreements stated. So the Swift court said, since it is undisputed that the private donations to the college were to be used specifically for plaintiff's medical research project at the institute, plaintiff has a tangible stake in the matter as his research project is the- That's not what we have here, right? We have a dispute here. So I don't read that case as one way or the other. It just said it's undisputed that the donations at issue were used to be used specifically for plaintiff's medical research project. So obviously that's undisputed. You have a special interest here. They're saying the chartering documents don't do that. Judge Bianco, I don't think there's a dispute in this case that the donations to the foundation were intended to be used specifically for the academy. The gift documents are all in the joint appendix from 108 to 138. Even the district court itself seemed to acknowledge that the donees in this case, I don't think that my brethren for the appellees would dispute that the people who gave the money from these four funds intended for it to be used for the academy. And that's what was the case in Swift. It wasn't that there was a chartering document that said that. It was the gift agreements, which is precisely the case here. Well, so one of the things that I'm having a hard time square away, and you all are pretty naked about it in your briefs, is that the foundation was deliberately established as a distinct and autonomous entity in order to pursue tax exemption benefits. So now you're suggesting that you have standing. But how do we, you basically said that this was all legal fiction so that people would get tax benefits, and yet you're asking us to perpetuate that. So, Judge Perez, I think in this case, the question of whether the foundation complied with its obligations under the tax laws is not presented. But the form 1023, which was submitted to the IRS, was transparent at all times about the special interests that the academy had. This is at A9 in the complaint, paragraph 6. The form that was submitted to the IRS by the foundation said, the foundation has been created to support and encourage basic scientific research in Israel and elsewhere in the world. The foundation will evaluate projects, et cetera. The foundation expects to have a strong relationship with the Israel Academy of Sciences and Humanities. It is expected that a substantial portion of all grants... I mean, I think y'all, there was a system that worked for both organizations until it didn't. And now you're trying to come to us and trying to have the court fill in the gaps for what basically only worked because both the parties found it workable. So what are we supposed to do? I mean, and I see you arguing in that both, we're not supposed to just look at the chartering documents, but we're also supposed to understand other documents as chartering documents. So is it an alternative or like what theory do you have? It's not an entitlement. The question here, there's an evidentiary question, which is what is the purpose of the foundation? And there's nothing in New York law that says a court can only look at the chartering documents. So the seminal case, ALCO, ALCO-Gravir says there's an exception to the general rule, however, when a particular, this is the Court of Appeals, when a particular group of people has a special interest in funds held for a charitable... That same case also said it should be narrowly construed and that there were specific criteria. And as far as I can tell, you don't, you're not at least squarely in line. And you'd be asking us to extend something. And the question is, should we be doing that? Should we send it to the state to certify? Should we certify to the state court to have them make the distinction for us extending when it's not on all fours with ALCO? So I would understand why the court might certify this, but I don't think that's necessary because we are not asking this court to extend New York law. The case, the New York decisions- You say the 1023, but in Sagticos itself, the lower court utilized the 1023 and it was reversed, right? That was one of the forms that the court used that the second department said no, right? The appellate division in Sagticos did not address one way or another the 1023. But if you look at the fact that the comment about the will, it's clear that Sagticos looked to something beyond the bylaws. So did the court in Trust Co. I want to go back to Judge Petta's question. I understood it too, that the charting document was framed that way specifically for tax purposes, so as not to identify a particular beneficiary. Is that your suggestion that wasn't the purpose of the way the charting document was set up? I thought that was the whole reason. No, no, it is set up that way. So then the question is, I have the same question that she had. If the purpose was to set it up so that there'd be no particular beneficiary for tax purposes, nobody would have a quote-unquote special interest. Now you're coming to us and saying because things have gone wrong, we want to have a special interest. That struck me the same way. That seems not something we should be doing. I don't think so, Your Honor. I think the evidence in this case shows that there has always been a special interest that the Academy has had. You just kept it out of the charting documents. That is how these entities, these American friends of entities, are set up pretty much at all times. And if there's a question about— But you didn't call yourself the friends of, right? I mean, there was a reason. I mean, somebody, like why? I mean, you knew that they all are sophisticated actors. You didn't. There was a reason that somebody thought beneficial to do so. My understanding of the record is that there was going to be room for some play in the joints, and it worked fine for both parties until it stopped. The availability of room for some play in the joints is not inconsistent with an entity having a special interest or a preference that gives it standing under New York law. I mean, after all, the reason for this rule is that the courts don't want to be inundated by, you know, essentially anyone who might claim to have a potential interest. That's not at all the case in this case. In this case, the gift agreement said— So what is the rule that you think we should write where you would be on the side of the line that you want to be, and it will not open the floodgates? Like, what are the physical words that you think will appropriately be upholding ALCO and not be stepping into the area that ALCO warned us of being too loosey-goosey about this? I think the rule should be that a court, in determining whether there is a special interest, should look to whatever documents or evidence is presented in the complaint or by the parties to demonstrate whether there is or is not such an interest. That is what the New York courts have done. In fact, this court, in its admittedly unpublished decision in Hadassah, never said that there is a limitation to the bylaws and certificate of incorporation. In this court's decision in the Hadassah case— And how does that narrow, consistent with ALCO? Because that, to me, makes courts have to be making assessments as to which documents are relevant, whether or not they're probative. Like, how does that not open the floodgates to courts having to make a very, very laborious and fact-intensive, without any other guidelines, rule? Well, this case was dismissed just because it was on the face of the complaint. And courts make those assessments at all times. The complaint itself, in this case, asserted that the foundation was set up to primarily prefer and provide support to the academy. And I don't think that it's asking a district court to do anything other than what district courts do in a complaint, or whether—this is not an Article III case— but whether, based on what's in the face of the complaint or appended documents, a party has Article III standard. This is what New York courts have been doing— But you are at least conceding that we would be moving from a bright-line rule to a less bright-line rule. So that is at least an extension of ALCO. I think it's the opposite, Your Honor. I think this court would be imposing a bright-line rule that has never existed in New York law. So this court would be altering New York law if it were to rule, essentially for the first time by any appellate court, that only bylaws and certificates of incorporation can be examined in making this decision. That would be altering New York law. All right. Thank you, Mr. Shapiro. I'm going to give you two minutes for rebuttal. Mr. Rubel. May it please the Court. Daniel Rubel for Defendant American Foundation for Basic Research in Israel, Inc. So to address a few points, the New York law is clear that in order to be conferred with special interest, the court needs to look to the chartering documents. In ALCO, the court looked to the certificate of incorporation to make this determination. We should note that the court said this is a narrow exception to the general rule, which says that the attorney general is invested with power to enforce any actions against a 501c3 entity. The academy here is not bereft of any remedy. They're free to go to the attorney general if they would like. Saktikos and Hadassah interpreted ALCO in this way, that in order to be conferred with special interest standing. What are we supposed to do with the multiple formal agreements that the foundation pledged it would distribute major donations solely in pursuit of the academy goals? I mean, it seems to me like both sides were trying to play real cute. But that's not really what the case is about. The case is about right now, does the academy have standing? In order to have standing, they need to be named in the chartering documents. If we looked outside the chartering documents and we looked at the gift agreements, it would be a nightmare for the courts. What are we supposed to do about the formal agreements that were made? I mean, is it actually appropriate for us not to consider them at all when certainly there was a benefit to the foundation to do so? Yes, because we have case law which says that the court should not look to these types of agreements in determining special interest. The Hadassah case was very clear. And it said we do not look to the charter. Is it true that they've been the only party to have ever been a foundation beneficiary? Well, based on the allegations and the complaint, first of all, in their own reply brief, the academy says they were not the sole beneficiary. They were a significant beneficiary. The allegations only concern these four funds. Was there a period in time that they were the only beneficiary? Well, we're only looking at the allegations and the complaints. And the allegations and the complaints state that there were times there was another beneficiary, which was related to the academy originally called the Israel Science Foundation, who also received funds from the academy, I mean from AFBRI. Would the foundation have existed at all if it lacked the ability to receive tax-exempt donations? Well, it appears from the record that AFBRI was set up to be a 501c3 entity in order to be able to raise money pursuant to the rules of 501c3. Then why shouldn't we consider the 1023 form a chartering document? Because the 1023 is clearly not a chartering document, as Judge Bianco pointed out. Yeah, but you just said that it wouldn't have existed if it hadn't had the ability to receive tax-exempt donations. Right, but first of all, the Sacticos case rejected that argument and specifically said the certificate of incorporation is the chartering document. Moreover, special interest is a legal entitlement. This application form is merely a notification to the IRS that AFBRI wants to act as a tax-exempt entity. It does not confer any legal rights and entitlements and has never been recognized. What about the wrong resolution establishing the academy as a co-trustee? Again, there's absolutely no case law stating that a resolution is a chartering document. This is an isolated resolution which has been mischaracterized, which simply states Was it repealed? Yes, as it states in the amended complaint, when the academy attempted to take control improperly of AFBRI, AFBRI removed the academy from that role so it could maintain its independent status. So we feel that the case, and another point to address is the Swift case. The Swift case was a 2006 Westchester County Supreme Court case. And to the extent that an argument could be made that pursuant to the Swift case, the court looked outside of the chartering documents. Such a ruling was overruled by the Appellate Division's Second Department in Sacticos when it stated that we can only look to the chartering documents themselves. But I couldn't come up with, and maybe you can tell me, I couldn't come up with any other case that had such extensive documents of coordination that inconsistent with somebody claiming a special interest beneficiary. I mean, is there another case where you can tell me where a special interest beneficiary was denied when they had this level of coordinating documents? Well, the Hadassah case has an extensive level of documents as well. But the issue is that the court shouldn't be burdened to have to look at so many documents. That's what Hadassah explains the policy concerns. It says that the court shouldn't be. Well, thank you for being very concerned about the court being burdened. I mean, part of what we're trying to do is find out whether or not a totality circumstances approach is something more consistent with the case. Well, in addition, every single time that you would have a party like Hadassah who feels that they didn't get the donations they were entitled to, pursuant to any type of gift agreement, then they'll be running to court suing the 501C3, and that will compromise the 501C3's ability to operate with complete discretion and control as an independent entity. And it is your position that the coordinating documents in this case are no greater than what happened in Hadassah? I don't know about that. I don't think that that's material. I think what's material is that the law says that you need to look to the chartering documents in order to establish a special... Hadassah, there were no chartering. The charter, the certificate of corporation wasn't part of the record, right? Correct. So what was basically said in there to the plaintiff was you lose, even on these other documents, the gift agreements, you lose anyway. We didn't necessarily address this issue that we have here today, right? That is correct, Judge Bianco. The way the Hadassah case is written is that it's very clear that you need to look to the chartering documents to establish a special interest. And then the court said, even if we would look to the gift agreements, they don't contain language that Hadassah would have liked because the foundation still maintained discretion and control over the donations. And if we were to start looking at other documents and expanded New York law in that way, if the documents conflicted, then you potentially would have to have deposition testimony about what the intent was of the various documents. Correct. You wouldn't just be looking at other documents because you could have conflicts, right? Correct. And it would undo 70 years of practice. We have revenue rulings in the record which demonstrate how a foundation such as AFPRI is supposed to operate. It's supposed to operate independently, and it cannot earmark contributions for an entity such as the academy. The whole purpose of these revenue rulings and the practice over the last 70 years is to prevent this type of situation where you may have some type of foreign entity who's not happy with the way that the 501c3 is being operated and then go in court and try to vitiate the discretion and control, and that could jeopardize the 501c3 from maintaining its 501c3 status. Can I ask you a technical question? I was going to ask Mr. Shapiro. I'll ask him on rebuttal. He's concerned. He asks us to deem the dismissal to be without prejudice, but the district court dismissed for lack of standing didn't indicate it was with prejudice, so I assume you agree on this record it's without prejudice, right? Well, our position is it should be dismissed with prejudice. Why? They've had a few bites at the apple already. They filed the original complaint. They filed the amended complaint, and now they're arguing the same issues on appeal. The concern is somebody might have standing. Well, maybe the academy doesn't have standing, but perhaps the donors have standing, and this is not with prejudice to the donors. So it's not with prejudice to the donors, but you're saying it's with prejudice to them? Yes. All right. Unless the court has any further questions. All right. Thank you. Mr. Shapiro, you have two minutes. Thank you. I'd like to start with the question raised by Judge Perez about whether there are any other cases that have had this level of evidence and indications of a special preference in which standing has been denied, and the answer is that there isn't. And counsel mentioned the Hadassah case. In the Hadassah case, there were numerous beneficiaries. In this case, there was essentially only one. There was this affiliated entity, the National Science, the other entity, but it was affiliated with the academy. In Hadassah, the charitable trust was formed decades before the beneficiary. In this case, the charitable trust was specifically formed to support the beneficiary decades after the beneficiary was formed. In the Hadassah case, there were no joint corporate documents. In this case, the beneficiary was named in the charitable trust's constitutive tax document and board resolutions. In the Hadassah case, the gift agreements did not specify the beneficiary was not a party or expressly mentioned. In this case, the beneficiary was expressly named in each gift agreement as the ultimate beneficiary. In Hadassah, there was no overlap of directors and officers. In this case, there's complete overlap. So I understand that one of the issues on the mind of the court is the burden, but even in our case here, the district court itself went through all of this evidence, so it's not as if the district court didn't consider it. The district court said, oh, I see there's overlapping. I see there were letters written on foundation letterhead to people saying, here's how you give to the academy. Give to us. The district court did that assessment. It doesn't seem to have been particularly burdensome. It just then, after looking at that evidence, said, well, but there's a rule that you can only look at these documents, and therefore, I'm not influenced. So it didn't answer what we contend is the actual question that the New York Court of Appeals has directed courts to ask when determining whether there is this type of standing, and that is, is there a special interest? And in Alco-Guevara, the only court of appeals case on this topic, the court simply said, the court never said only look at certain types of documents. It said there's an exception to the general rule when a particular group of people has a special interest in funds held for a charitable purpose, as when, so this is an example, as when they are entitled to a preference in the distribution of such funds, which, by the way, is true here, and the class of potential beneficiaries is sharply defined and limited in number here, too, as well. In the present case, they said, there is such a class. And then the court went on to say, and there are policy reasons for doing this. So imposing this rule, saying that only the charter and the bylaws, excuse me, only the certificate of incorporation and the bylaws, would be a change of New York law that is not articulated in any New York case and that is not applied in the New York cases. And so respectfully, the court should not close the door to a litigant in these circumstances. Can I ask you about the with prejudice, without prejudice issue? So you said before, this isn't Article III standing, right? This is not Article III standing. So why shouldn't it be with prejudice as to your client? Somebody else might be able to bring this and may have standing, but why wouldn't it be with prejudice to your clients? If they had their chance to demonstrate standing. Well, first of all, given that there was, if this court were to rule that the standard is the bylaws and certificate of incorporation. Right, but it's over, right? You couldn't bring the same action again and try to demonstrate standing, right? I think that we could revise the complaint perhaps to argue or to present in a more straightforward way that some of the documents here, such as the 1023, are constitutive governing documents so that they fall under the category of sort of a chartering or governing document. Why wouldn't you have done that in this case below? Make a motion to amend to try to do something like that, right? You could have asked the district court. We want to amend just in case this is going to be the rule. We want to add something. I don't know exactly what you would do. Counsel in the case below made the arguments that counsel made below, and we would benefit from the opportunity to clarify the standing issue. Do you agree that if you prevail that would jeopardize the foundation's 501C3 status? Not necessarily, Your Honor, because the foundation has been, we believe, transparent with the IRS throughout in its 1023 about how it was using the funds, and I think there are many other similar groups, either with American Friends in the name or not in the name, that have certificates of incorporation or bylaws that may not spell that out but have been transparent with the IRS about what they are doing. In general, as I understand it. You do agree that the special interest was deliberately omitted from the 501C3 filing? Yes, I think the record reflects that that's why the organization was set up the way it is. My understanding of the tax law, and I'm not a tax lawyer, is that if funds come to rest only briefly, I think this is cited in Napoli's brief, in the account of the American entity and are immediately just sent off and it is a conduit, that could cause problems. That's not really what has happened here. These endowment funds from the 1990s, these four large donations were made, and the foundation has since that time been managing the investment and taking the earnings from those funds and periodically funding the academy's grants at the academy's request. So you don't have that coming only briefly to rest test, but as I said, I'm not a tax lawyer, and I think as we both agree, that question is not presented in this case. The question presented in this case really is, is there a limitation on the type of factors that a court can look at when determining if there's a special interest? In this case, I believe even our adversaries would say, if you looked at anything beyond the certificate of incorporation and the bylaws, there can be no dispute that the academy has a special interest. All right, thank you. Thank you both. We'll reserve the session. Have a good day.